UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **FAIRFIELD ENERGY CORPORATION** | **CIVIL ACTION NO. 08-757** |
| VERSUS | JUDGE ROBERT G. JAMES |
| ANADARKO PETROLEUM CORPORATION AND ANADARKO ENERGY SERVICES CORPORATION | MAG. JUDGE KAREN HAYES |

RULING

Pending before the Court are Defendants Anadarko Petroleum Corporation and Anadarko Energy Services Company's (collectively "Anadarko") Motion for Partial Summary Judgment [Doc. No. 64] and Plaintiff Fairfield Energy Corporation's ("FEC") Opposition to Defendants' Motion for Partial Summary Judgment [Doc. No. 82]. For the following reasons, Defendants' motion is DENIED IN PART and GRANTED IN PART.

I.  BACKGROUND

This action concerns FEC's interests in several Jackson Parish natural gas wells. In 1982, FEC agreed to transfer its leasehold interest in 115 acres of land in Jackson Parish to Crystal Oil Company ("Crystal"). [Doc. No. 64-3, p. 4]. In return, Crystal agreed to pay FEC $250 per net mineral acre and give FEC an undivided 1/16 overriding royalty interest [1] until payout. [Doc. No. 64-3, p. 4]. Once the overriding royalty interest satisfied the initial debt, FEC retained an option to convert its royalty interest into a one-half working interest on a well-to-well basis. [Doc. No.

---

[1] "A holder of an overriding royalty participates in the gross value of the production but does not bear any cost of the production. In comparison, a possessor of a working interest while sharing in the gross value of the production bears a proportionate share of the production cost." *Louisiana Land & Exploration Co. v. Pennzoil Exploration & Production Co,*, 962 F. Supp. 908, 913 (E.D. La 1997).

64-3, p. 4]. At some point in early 2000, Anadarko became the owner of Crystal's interest in the Jackson Parish leasehold, subject to FEC's interests and option agreement.

While Crystal operated the wells, FEC received compensation for some of its interests by receiving actual volumes of gas from pipeline operators, a practice commonly known as in-kind compensation. FEC ceased taking in-kind compensation soon after Anadarko assumed control of the wells in 2000. Anadarko alleges that in 1999, FEC took volumes of gas in excess of its ownership share. To recoup this imbalance, Anadarko reduced its payments to FEC for the Davis Brothers J-1 well from October 2004 through June 2006 by a total of $19,999.62.

Following these reductions in payment, FEC commissioned an audit in January 2007. On March 8, 2007, FEC sent Andarko a letter notifying it of suspected underpayments, and Anadarko responded on March 28, 2007, in a letter denying any wrongdoing.

FEC alleges three distinct complaints against Anadarko. First, FEC claims that Anadarko has violated LA. REV. STAT. ANN. § 31:139, LA. REV. STAT. ANN. § 31:212:21, and LA. REV. STAT. ANN. § 31:212.31 by not providing FEC with an honest accounting of the wells' production and thereby avoiding a portion of the payment due to FEC. [Doc. No. 1-1, p. 2]. FEC seeks double damages and attorney fees under LA. REV. STAT. ANN. § 31:139 and LA. REV. STAT. ANN. § 31:212.23 based on Anadarko's alleged failure to state reasonable cause for the lack of payments.

Second, FEC alleges that Anadarko reduced FEC's net revenue interest in the Davis Brothers J-1 well effective October 4, 2004 and, therefore, owes FEC $19,999.62 in withheld payments. [Doc. No. 1-1, p. 3].

Third, FEC alleges that Anadarko has breached the 1982 option agreement by preventing FEC from converting its overriding royalty interests into one-half working interests. [Doc. No. 1-1, p. 3].

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

## III. ANALYSIS

### A. Statutory Complaints

FEC alleges violations of La. Rev. Stat. Ann. § 31:139 and 31:212.21, statutory penalty provisions governing underpayment of mineral royalties. FEC also alleges violations of La. Rev. Stat. Ann. § 31:212:31, a provision that requires certain financial disclosures to accompany payments of mineral royalties.

1. La. Rev. Stat. Ann. § 31:139

FEC does not have standing to sue under La. Rev. Stat. Ann. § 31:139 because FEC is not a mineral lessor. Louisiana Rev. Stat. Ann. § 31:139 applies to a "mineral lessor [who] seeks relief for the failure of his lessee to make timely or proper payments . . . ." A lessor is "one who conveys real or personal property by lease." Black's Law Dictionary, 986 (9th ed. 2009). In Louisiana, oil and gas leases are primarily treated as traditional leases of real property. Patrick H. Martin & Bruce M. Kramer, Williams & Meyers, Oil and Gas Law, § 202.1 (LexisNexis Matthew Bender 2010) (citing the comments to La. Rev. Stat. Ann. § 31:123). Here, FEC permanently transferred its leasehold interest in the wells while retaining royalty interests. Unlike a lessor, who transfers his possessory rights for a period of time, FEC has sold its lease without any possibility of reverter. Therefore, FEC is not a mineral lessor. Since FEC does not have standing to bring this claim, Anadarko's motion for summary judgment as to the La. Rev. Stat. Ann. § 31:139 claim is GRANTED.

2. La. Rev. Stat. Ann. § 31:212:21

FEC has standing to bring a claim under La. Rev. Stat. Ann. § 31:212.21, which provides "If the owner of a mineral production payment or royalty owner other than a mineral lessor seeks relief for the failure of a mineral lessee to make timely or proper payment of royalties or a production payment, he must give his obligor written notice of such failure as a prerequisite

to a judicial demand for damages." If the lessee fails to either make payment or provide reasonable cause for the nonpayment within 30 days, LA. REV. STAT. ANN. § 31:212:22 (West 2011), the court may award double the amount due plus legal interest, and attorney's fees. LA. REV. STAT. ANN. § 31:212.23 (West 2011). If the lessee provides reasonable cause for the failure to pay, then the court may only award interest from the date the payments became due. *Id*. Recovery under these statutes is limited to nonpayment of production payments or royalties, but does not include working interests. *Louisiana Land & Exploration Co. v. Pennzoil Land & Exploration Co.*, 962 F. Supp. 908, 922 (E.D. La.1997) (citing the plain language of the statute).

At the outset, Anadarko argues the LA. REV. STAT. ANN. § 31:212.21 claims which accrued prior to March 26, 2005, should be dismissed because the three-year prescriptive period has run. Anadarko emphasizes that it routinely provided FEC detailed financial statements and that a reasonable person could have discovered the alleged underpayments very near the time of occurrence.

In Louisiana, actions to recover underpayments of royalties from the production of minerals are limited by a three year prescriptive period. LA. C.C. ART. 3494(5) (West 2011). The period begins to run when the plaintiff reasonably should have known of the underpayment. *See Frey v. Amoco Production Co.*, 741 F. Supp. 601, 586-87 (E.D. La. 1990). Here, the financial disclosures would not have placed a reasonable person on notice. In *Frey*, the court noted that the defendant routinely provided check stubs with detailed financial disclosures to the plaintiff. *Id*. Nonetheless, the court found that these disclosures would only put a reasonable person on notice if there was an "internal inconsistency cognizable from the face of the document." *Id*. at 587. Similar to *Frey*, there were not obvious errors on the face of Anadarko's financial disclosures.

Instead, FEC has alleged that Anadarko understated the volume of gas produced by the wells, a discrepancy that would normally require an audit to discover. Since the disclosures would not place a reasonable person on notice of the underpayments, the prescription period did not begin to run until FEC conducted its audit in 2007. Therefore, the LA. REV. STAT. ANN. § 31:212.21 claims are not prescribed.

To survive a motion for summary judgment on its LA. REV. STAT. ANN. § 31:212:21 claim, FEC must demonstrate 1) the failure of Anadarko to make timely or proper payments, LA. REV. STAT. ANN. § 31:212.21 (West 2011), and 2) a written demand for payment given to Anadarko at least 30 days prior to this suit, LA. REV. STAT. ANN. § 31:212.22 (West 2011). If Anadarko provided reasonable cause for the nonpayment within 30 days, FEC will be limited to the amount due plus legal interest and attorney fees. LA. REV. STAT. ANN. § 31:212:23 (West 2011). Here, FEC has offered sufficient evidence to survive the motion for summary judgment on the LA. REV. STAT. ANN. § 31:212.21 claim. FEC submitted an affidavit of John Dean, an accounting expert. [Doc. No. 82-1]. In the affidavit, Dean discusses nine alleged accounting irregularities or improprieties that may have resulted in unpaid royalty interests to FEC.

Regarding the demand requirement, FEC will be limited to recovery under LA. REV. STAT. ANN. § 31:212.21 to the royalty claims for which it provided written notice at least 30 days prior to filing this action. FEC provided sufficient, written notice to Anadarko in a March 8, 2007 letter and an April 25, 2007 letter [Doc. Nos. 64-3, pp. 202-03; 49-3, pp. 1-2] for Vernon Field Unit LCV RA SU C and several wells in Unit SU L.[2] If FEC has nonpayment claims concerning

---

[2]In FEC's initial demand letter, it summarized the audit's findings: " . . . Fairfield Energy Corporation was paid on only 97% of the gas volume and from [sic] Vernon Field Unit LCV RA SU C based on the volume reported by your company to Office of Conservation. Further,

other wells, FEC may still seek recovery under contract law, but FEC may not seek penalties under LA. REV. STAT. ANN. § 31:212.21 for wells not discussed in the 2007 letters. Therefore, Anadarko's motion for summary judgment on the LA. REV. STAT. ANN. § 31:212:21 claim is DENIED.

### 3. LA. REV. STAT. ANN. § 31:212.31

FEC also alleges violations under LA. REV. STAT. ANN. § 31:212.31, which requires certain payment information to be disclosed to interest owners at the time of payment. LA. REV. STAT. ANN. § 31:212.31 (West 2011). FEC alleges that these disclosures were inaccurate, aiding Anadarko in its underpayments. Although LA. REV. STAT. ANN. § 31:212.31 does not include explicit recovery provisions, Louisiana courts have treated the statute as creating an implied cause of action. *See*, *e.g.*, *Duhe v. Texaco, Inc.*, 08-655 (La. App. 3 Cir. 12/11/08) (upholding a district court's certification of an action alleging, *inter alia*, violations of duties owed to class members under LA. REV. STAT. ANN. § 31:212.31).

In its complaint, FEC states that Anadarko violated LA. REV. STAT. ANN. § 31:212.31 by failing to provide a "full, reasonable and honest accounting of production and payments due from the wells . . . ." [Doc. No. 1-1, p. 2]. FEC also emphasizes that the payment records provided by Anadarko did not disclose production taxes, as required by LA. REV. STAT. ANN. § 31:212.31. In support of these allegations, FEC also relies on an affidavit of Dean, its accounting expert. Dean states generally that there were "some liquids produced from some of these wells for which [FEC] was not paid," and he relates the details of several wells for which he believes FEC was not

---

Anadarko paid only 93.6% of the proper amount on the following wells all in SU L, to wit: Davis Bro E-1; Davis Bros. E-3; Fisher 15-1; Fisher 16-1." [Doc. No. 64-3, p. 202].

adequately compensated.[3] [Doc. No. 82-1]. Dean also states that the financial disclosures did not comply with LA. REV. STAT. ANN. § 31:212.31 because they identified FEC's interests on a tract level rather than the required well or unit basis. Anadarko's memorandum in support of this motion corroborates that FEC's interests were disclosed on a tract level instead of a well or unit basis. [Doc. No. 64-1., p. 5].

Anadarko argues that the severance taxes were clearly disclosed on the financial disclosures and that FEC could have viewed the financial disclosures on a unit or well basis by visiting its website, which was indicated on the financial disclosure forms.

Although Anadarko correctly notes the disclosure of the severance taxes, FEC has offered sufficient evidence to raise a material issue of fact as to the accuracy of the reported interests as well as the lack of well or unit based disclosures. Therefore, Anadarko's motion for summary judgment as to the LA. REV. STAT. ANN. § 31:212.21 claim is DENIED.

**B.     Contractual Complaints**

In addition to the general accounting violations, FEC alleges that Anadarko reduced FEC's net revenue interest in the Davis Brothers J-1 well beginning on October 1, 2004. FEC claims this downward adjustment resulted in an underpayment of $19,999.62. Andarko admits royalty payments to FEC were reduced by $19,999.62, but it claims FEC had previously taken gas in excess of its ownership interest in the months immediately before and after Anadarko's acquisition of the well. Therefore, Anadarko states that it rightfully reduced its payments to recoup the difference. In support of its allegations that FEC took gas in excess of its interest,

---

[3] Dean effectively argues that Anadarko has miscalculated FEC's interests in several wells. During the mediation process, Anadarko admitted that some if its equations may have been incorrect, but it maintains that the overall payments to FEC accurately reflected FEC's interests.

Andarko offers the affidavit of Matt West, its Senior Staff Financial Analyst. [Doc. No. 64-3, pp. 194-95]. West states that based on his review of Anadarko's records, FEC had taken excess gas when Anadarko purchased its interest in the well in 2000.

FEC argues that Anadarko had no interest in the well at the time the alleged imbalance occurred and it never consented to these balancing reductions. In support of these arguments, FEC offers Dean's affidavit. [Doc. No. 82-1, p. 6]. Dean states that Anadarko has never provided any "authoritative" information concerning the imbalance. [Doc. No. 82-1, p. 6]. Additionally, Dean states that there may have been a bankruptcy proceeding which caused FEC not to receive some of the funds that Anadarko believes created the over-delivered positions. *Id.* Since there is a material issue of fact as to whether FEC took gas in excess of its interest against which Anadarko could reduce the royalty payments, Anadarko's motion for summary judgment as to the contract claim is DENIED.

FEC also argues that even if there was a balancing agreement, any claims Anadarko had under the balancing agreement are prescribed pursuant to LA. C.C. ART. 3494. In Louisiana, claims for the underpayment of royalties from the production of minerals are limited by a three year prescriptive period. LA. C.C. ART. 3494 (West 2011). Once the prescriptive period has run, a plaintiff's claim is extinguished, *Cochren v. Louisiana Power & Light Co.*, 94-0002, p. 9 (La. App. 4 Cir. 6/15/1994), but it does not nullify the underlying obligation. *See* LA. C.C. ART. 1761 (West 2011) ("A natural obligation is not enforceable by judicial action. Nevertheless, whatever has been freely performed in compliance with a natural obligation may not be reclaimed.").[4]

---

[4] LA. C.C. ART. 1762 lists "examples of circumstances giving rise to a natural obligation," including "[w]hen a civil obligation has been extinguished by prescription or discharged in bankruptcy."

Here, FEC seeks to recover for underpayments while hiding the very transactions that gave rise to those underpayments behind the prescriptive period. Since FEC's rightful claim to the royalties depends on whether FEC was over-delivered, Anadarko's motion for summary judgment on this claim is DENIED.

Pursuant to its 1982 contract for sale, FEC also asserts its option to convert its interest in a number of the Jackson Parish wells into a working interest. Anadarko does not move for summary judgment on this claim, and the claim remains pending for trial.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [Doc. No. 64] is DENIED IN PART and GRANTED IN PART. The motion is GRANTED as to the LA. REV. STAT. ANN. § 31:139 claim. This claim is DISMISSED WITH PREJUDICE. The motion is otherwise DENIED, and FEC's other claims remain pending for trial.

MONROE, LOUISIANA, this the 13th day of October, 2011.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE